2017 ND 240

**BEACH RAILPORT, LLC,**
**Plaintiff and Appellee**

v.

**Donnell F. MICHELS and Jeanne Michels, Husband and Wife, Defendants and Appellants**

**Donnell F. Michels and Jeanne Michels, Husband and Wife, Third-Party Plaintiffs and Appellants**

v.

**North Dakota Guarantee and Title Company, A North Dakota Corporation, doing business as Dickinson Guarantee and Title Company, Third-Party Defendant**

**No. 20160457**

Supreme Court of North Dakota.

Filed 10/17/2017

Erin.P.B. Zasada (argued) and Cassandra A. Marka (on brief), Grand Forks, ND, for plaintiff and appellee.

Spencer D. Ptacek (argued) and Lawrence Bender (appeared), Bismarck, ND, for defendants, third-party plaintiffs and appellants.

VandeWalle, Chief Justice.

[¶ 1] Donnell and Jeanne Michels appealed from a judgment partitioning real property between the Michels and Beach Railport, LLC. We conclude that the district court erred by applying an incorrect legal standard to review and adopt the partition referee's report and that the court erred by not holding an evidentiary hearing. We reverse and remand for further proceedings.

I

[¶ 2] In 2015, Beach Railport commenced this action against the Michels, who are husband and wife, for the partition of real property in Golden Valley County. Beach Railport and the Michels each own an undivided one-half interest in the subject property, consisting of two tracts of land totaling eighty acres–the "North Forty" acres and the "South Forty" acres. Donnell Michels has used the property for agricultural purposes. Beach Railport acquired its interest in the North Forty and various other tracts of land around the subject property as part of its planned construction of a rail trans-load facility. It also sought and obtained changes in zoning for certain property parcels. Beach Railport's construction plan did not include development on the South Forty acres.

[¶ 3] In January 2016, Beach Railport and the Michels entered into a stipulation agreement to have the district court appoint attorney Steven Wild to serve as the sole referee to partition the real property. The court entered an order based on the stipulation, declaring the Michels and

Beach Railport each owned an undivided one-half interest in the property at issue and appointing Wild as the sole referee to partition the property into two parcels between them according to their respective interest in the property. The court ordered the referee to view the real property and partition it in accordance with the law governing partition. If a fair and equitable division of the land could not be made, the court ordered the referee to decide whether the parties' shares could be equalized by payment of owelty and to report the amount to be paid. "Owelty" is defined as "1. Equality as achieved by a compensatory sum of money given after an exchange of parcels of land having different values or after an unequal partition of real property. 2. The sum of money so paid." *Black's Law Dictionary* 1279 (10th ed. 2014).

[¶ 4] The Michels and Beach Railport each hired appraisers to appraise the property. The referee subsequently viewed the property and reviewed the parties' appraisals and their written submissions that described their respective positions on how the property should be partitioned. In July 2016, the referee filed his report with the district court. In the report the referee decided that the property should be partitioned along the east-west quarter-quarter line, with Beach Railport receiving the North Forty and the Michels receiving the South Forty of the property. The referee concluded this partition was an equitable division of the property and neither party would be required to pay compensation to the other.

[¶ 5] Beach Railport moved the district court to confirm the referee's report. The Michels responded and objected to Beach Railport's motion for confirmation, submitting various exhibits and affidavits in opposition. The Michels contended that the referee did not make an equitable distribution of the property because the partition was based on erroneous assumptions and not supported by evidence. They claimed that each party should receive equal amounts of property zoned industrial and zoned agricultural; that the court should set aside the referee's report or modify it in an east-west division; and that the matter should be tried in district court.

[¶ 6] In October 2016, the district court held a hearing on Beach Railport's motion to confirm the referee's report. The Michels argued, among other things, that a trial was necessary because of disputed issues of fact about valuation of the property. The court denied the Michels an evidentiary hearing and confirmed the referee's report, adopting the report's findings and conclusions in its findings of fact, conclusions of law, and order for judgment. A judgment of partition was entered.

II

[¶ 7] The Michels argue the district court abused its discretion in allotting the North Forty to Beach Railport and the South Forty to them.

[¶ 8] Chapter 32-16, N.D.C.C., provides a special statutory proceeding and governs the partition of real property. *See also* N.D.R.Civ.P. 81(a), Table A (containing "a nonexclusive list of statutes pertaining to" special statutory procedures). Section 32-16-01, N.D.C.C., authorizes proceedings to partition property "according to the respective rights of the persons interested therein and for a sale of such property or a part thereof, if it appears that a partition cannot be made without great prejudice to the owners." If the property is "so situated that partition cannot be made without great prejudice to the owners, the court may order sale" of the property. N.D.C.C. § 32-16-12. Otherwise, the court must order a partition according to the parties' respective ownership rights and appoint

three referees to partition the property. *Id.*

[¶ 9] "In making the partition, referees must divide the property and allot the several portions thereof to the respective parties, quality and quantity relatively considered, according to the respective rights of the parties as determined by the court." N.D.C.C. § 32-16-13. "The referees must make a report of their proceedings, specifying therein the manner in which they executed their trust, and describing the property divided and the share allotted to each party with a particular description of each share." N.D.C.C. § 32-16-14. "The court may confirm, change, modify, or set aside the report of the referees and, if necessary, may appoint new referees." N.D.C.C. § 32-16-15.

■■■ [¶ 10] Under N.D.C.C. § 32-16-01, "[p]artition is a matter of right between cotenants." *In re Estate of Loomer*, 2010 ND 93, ¶ 17, 782 N.W.2d 648 (quoting *First Trust Co. v. Mast*, 385 N.W.2d 104, 105 (N.D. 1986)). "The law favors partition in kind, and there is a presumption that partition in kind should be made unless great prejudice is shown." *Loomer*, at ¶ 17 (quoting *Schmidt v. Wittinger*, 2004 ND 189, ¶ 7, 687 N.W.2d 479). We have explained that "[p]artition is an equitable remedy governed by equitable principles." *Loomer*, at ¶ 17. As such, "[d]istrict courts have 'wide judicial discretion in partition actions to "do equity" and to make a fair and just division of the property or proceeds between the parties,' and 'great flexibility in fashioning appropriate relief for the parties.'" *Id.* (quoting *Eastman v. Nelson*, 319 N.W.2d 134, 136 (N.D. 1982)). All owners of an interest in property require equal consideration for partition in kind, including consideration of sentimental attachment, the situation of the owners, and the location and character of the property. *Loomer*, at ¶ 17 (discussing *Schnell v.*

*Schnell*, 346 N.W.2d 713, 716-21 (N.D. 1984)).

■■■ [¶ 11] A district court's decision on the proper division of property or proceeds between the parties and the form of relief granted will not be disturbed on appeal absent an abuse of discretion. *Eastman*, 319 N.W.2d at 136. A court's findings in a partition action will not be reversed on appeal unless they are clearly erroneous. *Loomer*, 2010 ND 93, ¶ 18, 782 N.W.2d 648; *Wenzel Estate v. Wenzel*, 2008 ND 68, ¶ 5, 747 N.W.2d 103. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all the evidence, we are left with a definite and firm conviction a mistake has been made. *Loomer*, at ¶ 18. Questions of law, however, are fully reviewable on appeal. *Wenzel*, at ¶ 5; *Kienzle v. Selensky*, 2007 ND 167, ¶ 9, 740 N.W.2d 393.

A

[¶ 12] The Michels argue the district court's decision to adopt the referee's findings of fact as its own is clearly erroneous. They contend the court misconstrued its obligations under N.D.C.C. ch. 32-16 in adopting the referee's report, and even if the court applied the proper standard, the court misapplied that standard.

[¶ 13] At the October 2016 hearing, the district court stated it was adopting the findings of the referee's report. In so doing, however, the court explained that it would defer to the referee's findings absent some "glaring error" and that the court found no "glaring error" to either reject or modify the referee's report. The court further explained:

I have reviewed the briefs, I have reviewed the report of the referee. I note that he, in fact, specifies what he reviewed. It included appraisals both from

[the Michels] and from [Beach Railport], respective appraisals. . . . I believe that my role in this instance is more in the nature of determining whether or not there was substantial evidence upon which the referee could make his decisions. I find that there is a substantial basis for him to make the ultimate decision, regardless of whether or not there were substantial bas[e]s for some of the minor aspects of that. . . .

(Emphasis added.)

[¶ 14] The Michels argue the district court erred when it rejected reviewing the referee's report de novo. They assert the report is only a proposal and a court is not bound to accept it. They further contend the report should not receive deference accorded to decisions of an administrative agency or executive branch commission. They contend that N.D.C.C. § 32-16-15 does not require the court give any deference to the referee's report and the court's decision to adopt the referee's findings in this case was induced by an erroneous view of the law and is clearly erroneous. The Michels argue, alternatively, that if "substantial evidence" is the proper standard, the court misapplied that standard because the court must actually review the evidence.

[¶ 15] Beach Railport responds that the district court properly confirmed the referee's report and that the referee considered all the information the parties submitted, including information from the Michels' appraiser. Beach Railport asserts the affidavits and other documents the Michels submitted to the court in objecting to its motion to confirm did not persuade the court the referee had erred in its findings. Beach Railport contends the district court may defer to the referee's findings under N.D.C.C. ch. 32-16 and can adopt the referee's report in a partition action without looking into the underlying evidence relied on by the referee. Beach Railport further contends the court evaluated the referee's report and found sufficient evidence in the record supported confirming the report.

[¶ 16] Here, the district court stated at the hearing on Beach Railport's motion to confirm the referee's report that it would be deciding whether "substantial evidence" existed for the referee to make the "ultimate decision." This Court has generally applied this type of "substantial evidence" standard in reviewing appeals from orders of the Industrial Commission under N.D.C.C. § 38-08-14. *See Langved v. Continental Res., Inc.*, 2017 ND 179, ¶ 8, 899 N.W.2d 267; *Hanson v. Indus. Comm'n*, 466 N.W.2d 587, 590 (N.D. 1991); *Amoco Prod. Co. v. N.D. Indus. Comm'n*, 307 N.W.2d 839, 842 (N.D. 1981). As we have explained, "[t]he 'substantial evidence' test 'is something less' than the greater weight of the evidence and the preponderance of the evidence tests, and differs from the usual standard of review for administrative decisions under N.D.C.C. § 28-32-46." *Langved*, at ¶ 8. " 'Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,' and we 'accord greater deference to Industrial Commission findings of fact than we ordinarily accord to other administrative agencies' findings of fact.' " *Id.*

[¶ 17] Under N.D.C.C. § 32-16-15, however, after the district court has received the report of the referees, "[t]he court may confirm, change, modify, or set aside the report of the referees and, if necessary, may appoint new referees." Construing similar statutes, courts have held a referees' report constitutes only a "proposal" for the court's consideration and the court has discretion in reviewing or adopting the report. *See, e.g., Gartner v. Temple*, 2014 S.D. 74, ¶ 20, 855 N.W.2d 846; *Englehart v. Larson*, 1997 S.D. 84, ¶ 23, 566 N.W.2d

152; *Tillett v. Lippert*, 275 Mont. 1, 909 P.2d 1158, 1160-61 (1996); *see also* 59A Am. Jur.2d *Partition* § 113 (2015) ("The [referees'] report . . . constitutes only a proposal for the trial court's consideration, and is subject to judicial review, and the court may affirm, modify, or set aside or vacate the report.").

[¶ 18] While a district court may commit error if it confirms a referees' report not supported by "substantial evidence," *see Britton v. Brown*, 2013 MT 30, ¶ 27, 368 Mont. 379, 300 P.3d 667; *Tillett*, 909 P.2d at 1161; the court still retains its discretion in ultimately deciding whether a partition is equitable in reviewing whether to confirm the report.

[¶ 19] On this record, the district court reviewed the referee's report and findings with deference usually accorded to executive branch commissions or agencies, with the basis of such deferential review grounded in the doctrine of separation of powers. Such deference is not appropriate for referees in a partition action. Rather, in reviewing the referees' report under N.D.C.C. § 32-16-15, the district court retains its discretion and the ultimate responsibility to decide whether a proposed partition is equitable. Although the district court agreed with the referee's report and adopted its findings of fact, we conclude the court in this case applied too deferential of a standard of review in considering the referee's report.

[¶ 20] We conclude that the district court's decision to adopt the referee's findings of fact as its own findings was induced by an erroneous view of the law in its consideration whether to confirm the report. We therefore conclude the court's findings of fact are clearly erroneous and reverse and remand for the court to apply the correct standard in deciding whether to "confirm, change, modify, or set aside" the referee report under N.D.C.C. § 32-16-15.

### B.

[¶ 21] The Michels argue the district court erred in refusing to hold an evidentiary hearing despite their request in objecting to Beach Railport's motion to confirm the referee's report.

[¶ 22] Generally, an equitable action is triable to the court without a jury, *Union State Bank v. Miller*, 335 N.W.2d 807, 808-09 (N.D. 1983), and we have said partition actions are equitable in nature. *Loomer*, 2010 ND 93, ¶ 17, 782 N.W.2d 648; *see also Dakota Bank & Trust Co. v. Federal Land Bank*, 437 N.W.2d 841, 844 (N.D. 1989) (quiet title and partition actions are equitable; therefore, district court properly refused jury trial request in ordering a bench trial).

[¶ 23] During the October 2016 hearing, the Michels' counsel requested an opportunity to cross-examine Beach Railport's appraiser and to present additional evidence to the court supporting their proposed partition. In their objection to Beach Railport's motion to confirm the referee's report, the Michels specifically requested the court hold a trial on disputed factual issues. They challenged the report's specific findings on the property's value including the value of three grain bins, the purported "equal" value of the north and south halves for agricultural purposes, and the specific values for the halves. They contend the findings are disputed and the referee did not explain how it reconciled the parties' conflicting evidence.

[¶ 24] The Michels argue the district court should have held an evidentiary hearing and rely on *Britton*, 2013 MT 30, ¶ 27, 300 P.3d 667, in which the Montana Supreme Court held due process requires an evidentiary hearing in partition actions under certain circumstances. Beach Rail-

port responds that N.D.C.C. ch. 32-16 does not require an evidentiary hearing and that the Michels neither moved to modify, reject, or set aside the referee's report nor moved the court under N.D.R.Ct. 3.2 for an evidentiary hearing.

[¶ 25] In *Coon v. N.D. Dep't of Health*, 2017 ND 215, ¶ 28, 901 N.W.2d 718, we explained the constitutional concerns for due process considerations:

> The state and federal constitutions provide the State may not deprive any person of life, liberty or property without due process of law. *See* U.S. Const. amend. XIV, § 1; N.D. Const. art. I, § 12. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *In re N.A.*, 2016 ND 91, ¶ 10, 879 N.W.2d 82 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 [96 S.Ct. 893, 47 L.Ed.2d 18] (1976)). The first inquiry in every due process challenge is to determine whether the plaintiff has been deprived of a "property" or "liberty" interest. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 [119 S.Ct. 977, 143 L.Ed.2d 130] (1999). "Only after finding the deprivation of a protected interest do we look to see if the State's procedures comport with due process." *Id.*; *see also Wilkinson v. Austin*, 545 U.S. 209, 224-25 [125 S.Ct. 2384, 162 L.Ed.2d 174] (2005) (stating the three-prong test from *Mathews v. Eldridge* applies once a protected liberty or property interest has been established).

[¶ 26] In *Britton*, 2013 MT 30, ¶ 28, 300 P.3d 667, the court construed similar partition statutes to our own and held due process requires parties to a partition action "be afforded the right to be heard when 'the report comes before the court' for consideration." The court reasoned that although partition referees act as "quasi-judicial officers," the district court is solely vested with the power to partition property and extinguish property rights and that after the referees' report is filed, the court has wide discretion in reviewing, modifying, or adopting the report. *Id.* The court further explained a party's due process right to an evidentiary hearing when the report of the referees is challenged:

> Parties to a partition action have the right to object to the referees' partition report before the District Court. This objection may be founded upon a material mistake of law or of fact[.] Because a partition action is an adversarial proceeding, the party who believes that the referees' report is deficient bears the burden of offering sufficient evidence to support her objection. If the referees' report becomes a matter of legitimate dispute due to the submission of sufficient evidence, the report then is subject to challenge in an evidentiary hearing. If the district court fails to hold an evidentiary hearing after a party submits sufficient evidence challenging the report, the court has denied that party due process of the law. An objection unsupported by sufficient evidence does not entitle a party to an evidentiary hearing because that would frustrate the statute's goal of providing a cheap and expeditious method of partition.

*Britton*, at ¶ 29 (citations and quotation marks omitted). *See also* 59A Am. Jur.2d Partition § 112 (2015) ("[I]f a report becomes a matter of legitimate dispute due to the submission of sufficient evidence, the report is subject to challenge in an evidentiary hearing.").

[¶ 27] We agree with the Montana Supreme Court's rationale in the *Britton* case and adopt it for deciding when due process requires the district court to hold an evidentiary hearing. *See Britton*, 2013 MT 30, ¶ 30, 300 P.3d 667; *compare* Mont.

Code Ann. § 70-29-212, *with* N.D.C.C. § 32-16-15. We therefore similarly hold that when a party makes a substantiated claim of factual or legal error in the report of the referees, due process protections and equitable concerns require the district court to hold a hearing to weigh the objections against the report to decide whether the report equitably divides the real property before confirming, changing, or modifying the report under N.D.C.C. § 32-16-15. If neither party presents substantiated objections to the report supported by sufficient evidence, the district court may confirm the report under N.D.C.C. § 32-16-15 without holding an evidentiary hearing. A party will also be entitled to be heard on substantiated objections to errors of law.

[¶ 28] In this case, the Michels objected to the referee's partition report, submitted evidence challenging the factual findings and conclusions, and requested a trial. We conclude the submitted evidence sufficiently placed the referee's report in legitimate dispute. On the basis of our review, we hold the Michels' objections were sufficient to compel the district court to hold an evidentiary hearing. We therefore direct that the district court hold an evidentiary hearing on remand. As in *Britton*, 2013 MT 30, ¶ 31, 300 P.3d 667, we note an evidentiary hearing merely guarantees the Michels an opportunity to be heard but does not guarantee a particular result.

## C

[¶ 29] The Michels argue the referee's report and district court's conclusions do not comply with N.D.C.C. ch. 32-16 and various common law considerations. They contend the referee and court erred in relying and applying the *Schnell* factors in partitioning the land. *See Schnell*, 346 N.W.2d 713, 716-21 (N.D. 1984); *see also Loomer*, 2010 ND 93, ¶ 17, 782 N.W.2d 648. They also argue no basis existed to allocate Beach Railport's investment burden on the Michels and the parties were not "equally favored" in the partition decision, contending a cotenant may not charge another cotenant for improvements to shared property, unless such improvements are made with the other cotenant's consent or are "necessary, useful, substantial, and permanent, enhancing the value of the estate." *Gjerstadengen v. Hartzell*, 9 N.D. 268, 277, 83 N.W. 230, 233 (1900); *see also Berg v. Kremers*, 181 N.W.2d 730, 736-37 (N.D. 1970); *but see McKechnie v. Berg*, 2003 ND 136, ¶ 16, 667 N.W.2d 628 ("In a partition action, a cotenant may be granted an allowance for the value of substantial, necessary, and permanent improvements which enhance the property's value.").

[¶ 30] Because we are reversing and remanding this case, we do not address these issues but rather permit the district court to consider the Michels' arguments in the further proceedings on remand, which may render the issues moot after the evidentiary hearing.

## III

[¶ 31] We have considered the parties' remaining arguments and conclude they are either without merit or unnecessary to our decision. The judgment is reversed, and the case is remanded for further proceedings.

[¶ 32] Gerald W. VandeWalle, C.J.

Jerod E. Tufte

Daniel J. Crothers

Lisa Fair McEvers

Carol Ronning Kapsner, S.J.

[¶ 33] The Honorable Jon J. Jensen was not a member of the Court when this case was heard and did not participate in this

decision. Surrogate Judge Carol Ronning Kapsner, sitting.