# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2025 ND 235

Bryan J. Tischmak,                                                    Plaintiff and Appellant

v.

Sondra F. Theurer and Allen R.
Tischmak, as Co-Trustees of
the Tischmak Family Irrevocable
Trust dated September 1, 2016,                          Defendants and Appellees

## No. 20250059

Appeal from the District Court of Grant County, South Central Judicial District, the Honorable David E. Reich, Judge.

AFFIRMED AS MODIFIED.

Opinion of the Court by Tufte, Justice.

Lisa M. Hettich (argued) and Garth H. Sjue (on brief), Williston, N.D., for plaintiff and appellant.

Daniel J. Nagle, Mandan, N.D., for defendants and appellees.

**Tufte, Justice.**

[¶1]   Bryan Tischmak appeals from a judgment partitioning property between him and the Tischmak Family Irrevocable Trust (the "Trust"). Bryan Tischmak argues the district court erred in adopting "Recommendation 5" of the referee's report and in calculating his share of the land income and expenses. We modify the judgment to exclude the Trust expenses from Bryan Tischmak's share, adding $2,417.20 to the amount the Trust owes him, and affirm as modified.

I

[¶2]   This partition action involves siblings and the real property (surface interest) they received from their parents, Fidelis and Odelia Tischmak, in Grant County, North Dakota, described as:

Township 131 North, Range 84 West, 5th P.M.
Section 4:     N½, N½S½
Section 5:     N½, SW¼
Section 8:     W½

Township 132 North, Range 84 West, 5th P.M.
Section 27:  SW¼
Section 28:  NW¼, S½
Section 33:  All
Section 34:  NW¼

[¶3]   The five Tischmak children—Janice, Kenneth, Allen, Bryan, and Sondra—were raised on this land, which their parents owned for decades. Fidelis and Odelia Tischmak had a small cattle and farming operation, living at the homestead (or "homeplace") on Section 28 of the property until 2006 or 2007. After they sold the cattle and Kenneth Tischmak moved out of state in 2000, Fidelis Tischmak started renting the real property to Russell Woodbury's cattle and farming operation. That same year, Fidelis and Odelia Tischmak conveyed the real property to their children as tenants in common, reserving life estates.

1

[¶4] In 2006 or 2007, Fidelis and Odelia Tischmak moved to Mandan. Fidelis died in 2013, and Odelia died in 2020. Shortly after Fidelis's death, Bryan Tischmak's siblings discussed placing their property interests into a trust. Bryan opposed the proposal. His four siblings created the Trust in September 2016 and conveyed their undivided interests in the real property to it in April 2017. In January 2022, the Trust entered into an "Exclusive Rock, Sand, and Gravel Materials Agreement" with Knife River Corporation covering portions of the real property in Sections 27, 28, 33, and 34 (the "Knife River Agreement").

[¶5] In early spring 2023, Bryan Tischmak commenced this partition action against the Trust, requesting the real property be divided and an accounting of the land income. After the Trust answered the complaint, the parties stipulated to the appointment of Carrie Mann as the referee and appraiser of the property. The district court appointed Mann as referee and ordered her to provide a report "detailing the best method to partition the property between the owners."

[¶6] On October 3, 2024, the district court held a bench trial where it heard testimony from Bryan Tischmak's wife and sons and the four surviving siblings. The parties stipulated to admit multiple exhibits, including the referee's report. Bryan Tischmak argued that the court should adopt "Recommendation 2" from the referee's report, granting him the real property in Sections 27 and 28, which includes the homeplace. The Trust disagreed with the referee's opinion and proposed its own partition plan.

[¶7] After the trial, the district court issued its findings of fact, conclusions of law, and order for judgment ("Trial Order"). The court adopted "Recommendation 5" from the referee's report; awarded Bryan Tischmak all of Section 33 and the NW1/4 of Section 34 in Township 132 North, Range 84 West; awarded the Trust the remaining real property; and ordered the Trust to pay Bryan Tischmak $10,972.81 ($5,400 as a contributory value payment from Recommendation 5, plus $5,572.81 for his share of the land income).

[¶8] The Trust moved to correct clerical mistakes in the Trial Order under N.D.R.Civ.P. 60(a). The Trust argued the district court inadvertently awarded Bryan Tischmak "all" of Section 33, instead of the "S1/2" of Section 33 as stated

2

in Recommendation 5 of the referee's report. Bryan Tischmak opposed the Rule 60(a) motion and moved to alter or amend the Trial Order under N.D.R.Civ.P. 52(b) and 59(j). Bryan Tischmak argued in part that the Trial Order should be amended to state that the Trust owed him an additional $5,164.40 ($2,417.20 which went to Trust expenses, and $2,747.20 for his share of the remaining 2024 land income). At the hearing on the Rule 60(a) motion, the court acknowledged the award of all of Section 33 to Bryan Tischmak was a clerical mistake, and confirmed its intent to adopt Recommendation 5. The court then issued an order correcting its clerical mistake:  it amended Bryan Tischmak's award of all of Section 33 to the S1/2 of Section 33, and awarded the N1/2 of Section 33 to the Trust, consistent with Recommendation 5. After a hearing, the court denied Bryan Tischmak's N.D.R.Civ.P. 52(b) and 59(j) motion. The court entered judgment.

## II

[¶9]   In a partition action, "[a] district court's decision on the proper division of property or proceeds between the parties and the form of relief granted will not be disturbed on appeal absent an abuse of discretion." *Beach Railport, LLC v. Michels*, 2017 ND 240, ¶ 11, 903 N.W.2d 88. A court's findings will not be reversed unless clearly erroneous. *Id.* "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all the evidence, we are left with a definite and firm conviction a mistake has been made." *Id.* Questions of law are fully reviewable on appeal. *Id.* The court's decisions on the N.D.R.Civ.P. 52(b), 59(j), and 60(a) motions are reviewed for an abuse of discretion. *See Est. of Vizenor ex rel. Vizenor v. Brown*, 2014 ND 143, ¶ 8, 851 N.W.2d 119 (Rule 52(b)); *Watford City Lodging LLC v. Miskin*, 2019 ND 136, ¶ 7, 927 N.W.2d 860 (Rule 59(j)); *State v. 1998 Jeep Grand Cherokee Auto.*, 2016 ND 9, ¶ 6, 873 N.W.2d 672 (Rule 60(a)). "A court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, its decision is not the product of a rational mental process leading to a reasoned determination, or it misinterprets or misapplies the law." *1998 Jeep Grand Cherokee*, ¶ 6.

A

[¶10] Bryan Tischmak argues the district court abused its discretion by adopting Recommendation 5 of the referee's report, awarding him the S1/2 of Section 33 and NW1/4 of Section 34, rather than Recommendation 2, which would have awarded him the real property in Sections 27 and 28, including the homeplace. He asserts that in adopting Recommendation 5, the court did not consider property access, fencing, and the effect of the Knife River Agreement; and that Recommendation 2 required "minimal fencing," provided "contiguous parcels with access," and "would not split taxable parcels, interrupt the current renter's access to and use of the tillable acreage, or create water issues for the renter's cattle operation." Bryan also argues that Recommendation 2 would make better use of the homeplace because he and his wife plan to live on the property and run a small cattle operation.

[¶11] "Partition is a matter of right between cotenants." *In re Est. of Loomer*, 2010 ND 93, ¶ 17, 782 N.W.2d 648. Section 32-16-01, N.D.C.C., allows cotenants to bring an action for partition of real property "according to the respective rights of the persons interested therein." *See also* N.D.C.C. § 32-16-41 (allowing court to make compensatory adjustment for inequality). In a partition action, the district court generally appoints three referees. N.D.C.C. § 32-16-12. But, when the parties consent, the court may appoint a single referee. N.D.C.C. § 32-16-46. "In making the partition, referees must divide the property and allot the several portions thereof to the respective parties, quality and quantity relatively considered, according to the respective rights of the parties as determined by the court." N.D.C.C. § 32-16-13. "The referees must make a report of their proceedings, specifying therein the manner in which they executed their trust, and describing the property divided and the share allotted to each party with a particular description of each share." N.D.C.C. § 32-16-14. "The court may confirm, change, modify, or set aside the report of the referees and, if necessary, may appoint new referees." N.D.C.C. § 32-16-15. "District courts have wide judicial discretion in partition actions to do equity and to make a fair and just division of the property or proceeds between the parties, and great flexibility in fashioning appropriate relief for the parties." *Loomer*, ¶ 17 (quotations omitted). All the owners of an interest in land must receive "equal consideration for

partition in kind, including consideration of sentimental attachment to the land, the situation of the owners, and the location and character of the land." *Id.*

[¶12] The district court found that "[e]ach of Kenneth, Allen, Bryan and Sondra express having sentimental attachment to the homeplace" and "both sides desire the farmstead, where they grew up." Bryan Tischmak wants to raise cattle in retirement, and the Trust members use the homeplace "regularly for family gatherings and work days on the property." The court found that "Bryan for reasons unknown to the Court is either unwelcome or has decided he desires to not have anything to do with the family during the gatherings." The court rejected Recommendation 2, finding no one sibling had "some higher emotional or familial interest" in the homeplace. The court found that "[a]ll of the options come with challenges," including "[f]encing, water, noncontiguous land and other hardships," which are "faced by ranchers and farmers throughout history." The court found "the location and character of the property" weighed in favor of Recommendation 5 because it would "effect 'efficient agricultural management'" for all (Trust, Bryan Tischmak, and renter).

[¶13] Contrary to Bryan Tischmak's assertion, the district court acknowledged the Knife River Agreement, found the agreement had not yet generated any income, and partitioned the property while giving due consideration to the agreement, including awarding Bryan Tischmak property (NW1/4 of Section 34) with an interest in, and subject to, the agreement. Moreover, Bryan Tischmak has not shown that he would be unable to access the property he was awarded in Recommendation 5. Kenneth Tischmak testified that Bryan Tischmak would have access to the NW1/4 of Section 34 via a section line. Under N.D.C.C. § 24-07-03, "section lines are considered public roads open for public travel to the width of thirty-three feet [10.06 meters] on each side of the section lines," and even when the section lines have been closed to the public, "they may be used to the benefit of the adjacent landowners." Bryan Tischmak has not shown that he would not be able to utilize the section lines to access his property.

[¶14] The district court's findings were not induced by an erroneous view of the law, Bryan Tischmak has not established there is no evidence to support the findings, and we are not left with a definite and firm conviction a mistake has

been made. Nor has Bryan Tischmak shown that the court acted in an arbitrary, unreasonable, or unconscionable manner, that its decision is not the product of a rational mental process leading to a reasoned determination, or that it misinterpreted or misapplied the law. We conclude the court's findings are not clearly erroneous and the court did not abuse its discretion by partitioning the property according to Recommendation 5.

B

[¶15] Bryan Tischmak argues Recommendation 5 is inconsistent with the district court's findings. He contends findings in paragraphs 20, 21, 40, and 41 of the Trial Order are inconsistent with the adoption of Recommendation 5 and consistent with the original award of all of Section 33 to him.

[¶16] In paragraph 20, the district court found that Section 33 "has access via gravel road in the northwest corner." Bryan Tischmak contends that because the court did not find that he has, or grant him, an easement across the N1/2 of Section 33, he would not have access to his property in the S1/2 of Section 33. Paragraph 20, however, was not specific to his award of the S1/2, but rather was a finding specific to the whole of Section 33. As explained, neither the evidence nor the law, N.D.C.C. § 24-07-03, supports Bryan Tischmak's contention that he is unable to access his property.

[¶17] In paragraph 21, the district court found that Section 34 has "limited access" if partitioned out as its own tract. Bryan Tischmak asserts he would not have access to the NW1/4 of Section 34 without owning the N1/2 of Section 33. He does not cite to any evidence in the record that shows he would have no access to the NW1/4 of Section 34. The finding itself contradicts Bryan Tischmak's assertion, noting there is access, albeit "limited," which applies only if Section 34 is partitioned out as its own tract. In addition to the NW1/4 of Section 34, Recommendation 5 awards Bryan Tischmak the S1/2 of Section 33. Bryan Tischmak may also utilize the section lines.

[¶18] In paragraph 40, the district court found that Recommendation 5 is "contiguous," and will allow "efficient agricultural management" for the Trust, Bryan Tischmak, and the renter. Bryan Tischmak contends only the N1/2 of

6

Section 33 is contiguous to the NW1/4 of Section 34, not the S1/2 of Section 33. As the Trust points out, the NW1/4 of Section 34 and the S1/2 of Section 33 share a common corner on an open section line. *See Merriam-Webster's Collegiate Dictionary* 270 (11th ed. 2005) (defining "contiguous" in relevant part as "touching along a boundary or at a point").

[¶19] In paragraph 41, the district court found that Bryan Tischmak has an interest in the Knife River Agreement "with ownership of portions of Section 33 and 34." Bryan Tischmak asserts that because the agreement does not include the S1/2 of Section 33, but does include the N1/2 of Section 33, Recommendation 5 is inconsistent with this finding. Because the Knife River Agreement includes the NW1/4 of Section 34, which was awarded to Bryan Tischmak, his argument is without merit. The finding merely states that he has an ownership interest in the agreement, not specifically that both of his sections are subject to the agreement.

[¶20] We conclude that the district court's findings are consistent with Recommendation 5.

C

[¶21] Bryan Tischmak argues the district court abused its discretion in granting the Trust's N.D.R.Civ.P. 60(a) motion and denying his N.D.R.Civ.P. 52(b) and 59(j) motion. He argues that inconsistencies between Recommendation 5 and the findings in paragraphs 20, 21, 40, and 41 of the Trial Order show that the court could not have intended to award him only the S1/2 of Section 33. He therefore argues the court erred in amending the Trial Order from all of Section 33 to the S1/2. These findings are consistent with Recommendation 5, and we reject the argument.

[¶22] Bryan Tischmak asserts that the district court could not grant relief under N.D.R.Civ.P. 60(a) because there were no clerical errors. Under N.D.R.Civ.P. 60(a), "[t]he court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record."

7

[¶23] In the Trial Order, the district court noted that the "parties stipulated to the appraiser's report as the report of the referee" and decided it was "going to use the options presented by the agreed upon referee." The court then expressly ordered that "'Recommendation 5' in the referee's report . . . is adopted and confirmed." None of the referee's recommendations were consistent with the award of all of Section 33 to Bryan Tischmak. Each of the referee's recommendations divided the property with Bryan Tischmak's one-fifth interest in mind, which the referee calculated at $675,400. Thus, the value of the property awarded to Bryan Tischmak in Recommendation 5 (including the $5,400 contributory value payment from the Trust) is $675,400. The referee valued the N1/2 of Section 33 at $488,000. If Bryan Tischmak is correct that no clerical mistake occurred and the court intended to award all of Section 33 to him, then the court made that order without acknowledging any deviation from the referee's recommendations—indeed, in direct conflict with its order adopting Recommendation 5—and without explaining why Bryan Tischmak was receiving $488,000 more in land above his one-fifth interest. Recognizing this discrepancy, Bryan Tischmak requested in his N.D.R.Civ.P. 52(b) and 59(j) motion to adjust the contributory value payment accordingly.

[¶24] At the hearing on the Trust's N.D.R.Civ.P. 60(a) motion, the district court stated the award of all of Section 33 to Bryan Tischmak was a clerical mistake, and it was the court's intent to adopt Recommendation 5. We conclude the court did not abuse its discretion in granting the Trust's N.D.R.Civ.P. 60(a) motion and denying Bryan Tischmak's N.D.R.Civ.P. 52(b) and 59(j) motion.

D

[¶25] Bryan Tischmak argues the district court erred in determining his share of the land income and expenses. The court ordered the Trust to pay Bryan Tischmak $5,572.81 for his share of the land income. Bryan Tischmak argues in the alternative for two figures the court should have awarded him instead of the $5,572.81. First, he argues he is owed $12,685.50 based on his accounting of his share of the principal balance ($9,938.30), plus his share of the 2024 FSA CRP payment and remaining 2024 rent ($2,747.20). Second, and in the alternative, he argues he is owed $10,737.21 based on the court's finding ($5,572.81), plus his

8

share of the 2024 FSA CRP payment and remaining 2024 rent ($2,747.20) and the amount that went to Trust-exclusive expenses ($2,417.20).

[¶26] As to his first figure ($12,685.50), Bryan Tischmak does not argue how the district court erred by using the ending balance of the Trust's checking account instead of his accounting, other than stating his accounting is "the best evidence in the record, taken directly from the bank statements and tax records." The court, however, found that the Trust members "testified that all income received from the Grant County property was deposited into the Trust checking account," and "[t]here was no conflicting testimony concerning the income derived from the property or that the income was not accounted for in the checking account statements." Because we do not reweigh the evidence, we reject Bryan Tischmak's argument that he is owed $12,685.50 based on his accounting. *Berger v. Repnow*, 2025 ND 25, ¶ 13, 16 N.W.3d 452 ("The task of weighing the evidence and judging the credibility of witnesses belongs to the trier of fact, and we do not reweigh credibility or resolve conflicts in the evidence.").

[¶27] Regarding his second figure ($10,737.21), Bryan Tischmak argues he is entitled to two additional amounts based on the district court's findings. In paragraph 17 of the Trial Order, the court found the Trust's bank accounts "evidence payments by the Trust to its personal accountant (Haga Kommer), the IRS and ND State Tax Commissioner for the Trust's taxes, and Kelsch Law Firm (the Trust's attorney for this action), none of which are to be paid with Bryan's money." In paragraph 18, the court found that "Bryan is owed his share of the Woodbury rent payments and the FSA CRP payments. It is of note that neither the Woodbury rent payments for the fall of 2024 nor the FSA CRP payments from 2024 are included on Bryan's Accounting."

[¶28] First, Bryan Tischmak argues the Trust owes him $2,747.20 for his share of the 2024 FSA CRP payment and remaining 2024 Woodbury rent. The trial in this matter occurred on October 3, 2024, and the Trial Order was entered on October 24, 2024. Thus, calendar year 2024 had not ended prior to trial or entry of the Trial Order. The district court, however, found Bryan Tischmak is owed his share of the Woodbury rent payments and the FSA CRP payments. The court has therefore already found he is owed his share of the 2024 FSA CRP payment and

9

remaining 2024 Woodbury rent. We conclude that the court has ordered the Trust to pay Bryan Tischmak his share.

[¶29] Second, Bryan Tischmak argues the Trust owes him $2,417.20 for these Trust-exclusive expenses, which the district court found were not to be paid with his money. We agree. Bryan Tischmak relies on checks appearing in the Trust's account statements, which the court otherwise relied upon to determine the ending balance. On the basis of its finding in paragraph 17, the court erred by not requiring the Trust to pay Bryan Tischmak back for these Trust-exclusive expenses which were paid with income owed (in one-fifth part) to him. The Trust argues these checks "were not specifically highlighted at trial." Photocopies of the checks, however, were entered into evidence at trial, and testimony was presented on these checks. In a footnote in his proposed findings, Bryan Tischmak cited the exhibit and page numbers where these checks could be found in the record. Further, this issue was specifically raised in Bryan Tischmak's briefing in support of his N.D.R.Civ.P. 52(b) and 59(j) motion. We therefore modify the judgment under N.D.R.App.P. 35(a)(1) to include this $2,417.20 owed to Bryan Tischmak.

III

[¶30] The judgment is affirmed as modified to include an additional $2,417.20 to Bryan Tischmak for reimbursement of the expenses he paid on behalf of the Trust.

[¶31] Jon J. Jensen, C.J.
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr
Allan L. Schmalenberger, S.J.

[¶32] The Honorable Allan L. Schmalenberger, Surrogate Judge, sitting in place of Crothers, J., disqualified.